UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:20-CV-04332 |
| | § | |
| TEXAS A&M UNIVERSITY, | § | |
| *Defendant.* | § | |
| | § | |

---

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**

---

TO THE HONORABLE JUDGE LEE H. ROSENTHAL:

Defendant Texas A&M University files this Response to Plaintiff's Application for

Temporary Restraining, and respectfully shows the following:

## I.  INTRODUCTION

Plaintiff is not entitled to immediate injunctive relief. This is a case of "she said," "he

blacked out." Plaintiff's former friend and fellow student (hereinafter "complainant") accused him

of sexually assaulting her during a spring break trip on March 6, 2020[1]; it is undisputed that both

Plaintiff and the complainant consumed significant amounts of alcohol prior to the alleged

incident; both the complainant and Plaintiff filed formal complaints with the University, but

Plaintiff instructed the University's Department of Civil Rights and Equity Investigations not to

take any action on his complaint[2]; Texas A&M University officials investigated complainant's

allegation and held a six-hour live hearing where the parties, witnesses, and the investigator

---

[1] Compl. ¶¶ 30-35.
[2] Ex. 4.

1

testified before the hearing officer and were subject to cross-examination[3]; the hearing officer found Plaintiff responsible for the sexual assault and conduct unbecoming of a cadet and sanctioned him accordingly[4]; and Plaintiff unsuccessfully appealed this decision[5]. On November 24, 2020, Plaintiff filed a formal complaint against his accuser with the University, which is now under investigation by the University.[6] Plaintiff exhausted his internal appeals on December 1, 2020 and the hearing sanctions took effect:  (1) A one-year suspension to begin on December 31, 2020 until December 31, 2021 with eligibility for re-enrollment in the University; (2) The mutual no-contact order between the parties would remain in effect indefinitely; (3) enrollment in and completion of the University's Ethic's & Decision Making Workshop; (4) A "reflective paper" of at least 700 words due no later than December 31, 2021; and (5) attendance at the University's Alcohol Education Workshop.[7] Thus, Plaintiff's request here for the Court to stay his suspension is a change to the status quo. This was the status of the parties as of December 1, 2020, before Plaintiff filed his application for a temporary restraining order on December 22, 2020.[8]

Plaintiff is not entitled to a temporary restraining order or any injunctive relief pending the resolution of this case. Plaintiff's application ask the Court to intervene to change the status quo by ignoring the University's Title IX procedures, conclusions, and sanctions based on a Complaint rife with speculative and conclusory allegations and outright misstatements of the facts. Plaintiff cannot show irreparable harm. A final judgment on the merits of Plaintiff's Complaint would rectify any harm that Plaintiff suffers. Numerous courts have held that a delay in education is not irreparable. In addition, reputational harm is compensable in damages. Moreover, Plaintiff is

---

[3] Compl. ¶¶ 44 – 49; Exs. 1, 2.
[4] Compl. ¶¶ 50 – 51; Ex. 2
[5] Compl. ¶ 55; Ex. 3.
[6] Ex. 5.
[7] Compl. ¶ 51.
[8] ECF No. 4.

unlikely to succeed on the merits. The crux of Plaintiff's argument during the University's proceedings and in this case is that because he cannot remember what happened on the night of the alleged sexual assault and both he and the complainant were heavily intoxicated, the University should have cobbled together a version of events that acquits him of responsibility. And the University did not do so because of the gender of the complainant and Plaintiff.

Plaintiff sues under Title IX and the 14th Amendment of the United States Constitution. Plaintiff asserts two theories of liability under Title IX. First, he seeks to articulate an erroneous-outcome claim. To state an erroneous-outcome claim, a plaintiff must plausibly allege that (1) he is innocent and was wrongly found to have committed the offense and (2) gender bias was a motivating factor behind the erroneous finding. Here, Plaintiff can do neither. His central argument is that because he has no memory of the relevant time period and it is out-of-character for him to engage in the alleged conduct, he is not responsible for the conduct. This is no more than an attack on the credibility findings of the investigator and the hearing officer. The officer was entitled to believe a version of events that identified Plaintiff as the perpetrator. Further, Plaintiff's allegations regarding the second element—that the University erred because of gender bias—are conclusory and insufficient to state a claim.

Second, Plaintiff seeks to articulate a selective-enforcement Title IX claim. This effort fails as well. Where courts have adopted that cause of action, they require a plaintiff to plausibly allege that regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was based on sex. In other words, Plaintiff must plead that a female— not the complainant—was in circumstances sufficiently similar to Plaintiff and that this comparator was treated more favorably.

Again, the allegations in the Complaint are insufficient to proceed on this theory. Plaintiff has identified no comparator who was similarly situated. In addition, Plaintiff cannot plausibly allege that the University initiated the investigation because the female student did so. Further, he alleges nothing about the severity of the sanctions because Plaintiff received the minimum sanctions allowed under the University's rules and policies.

Finally, Plaintiff seeks to assert a due-process claim.  This claim is procedurally barred and substantively inadequate. Procedurally, his constitutional law claim is barred by the Eleventh Amendment and does not fall within the *Ex Parte Young* exception because he sued the University—not an official in his/her official capacity. Substantively, he fails to adequately allege a due process claim because it is undisputed Plaintiff's claim was investigated and the investigator was subject to cross-examination at the live hearing, Plaintiff's counsel in this litigation was also present at the live hearing and able to cross-examine witnesses, including Plaintiff's accuser; and finally, the preponderance of the evidence standard is commonly used in civil proceedings and allowed under the Department of Education's Final Rule on Title IX investigations and hearings.

In support of this response, Defendant attaches the following exhibits:

Exhibit 1: Final Investigative Report, September 10, 2020

Exhibit 2: Hearing Outcome Letter, November 22, 2020

Exhibit 3: Denial of Appeal, December 1, 2020

Exhibit 4: Email correspondence requesting no action on Plaintiff's complaint, July 2020

Exhibit 5: Email correspondence reopening Plaintiff's complaint, November 24, 2020

## II. STATEMENT OF ISSUES

(1) Whether Plaintiff has met his exceedingly high burden of showing an entitlement to a mandatory injunction requiring the University to reverse the sanctions, including lifting the suspension.

(2) Whether the mandatory injunctive relief that Plaintiff seeks can be granted through an application for a temporary restraining order.

## III. ARGUMENT

### A. A Temporary Restraining Order Is an Extraordinary Remedy.

"A temporary restraining order is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 818 (W.D. Tex. 2017) (citing *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014)).The party moving for a temporary restraining order, like an applicant for a preliminary injunction, must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied; (3) that the threatened injury outweighs any damage that the temporary restraining order might cause the defendant; and (4) that the temporary restraining order will not disserve the public interest. *Currier*, 760 F.3d at 452 (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)); *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

An injunction should not be granted unless the movant "has clearly carried the burden of persuasion on **all** four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (emphasis added). This is particularly true when a party seeks an order directing state officials to perform or discontinue certain conduct. *Morrow v.*

5

*Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). And, pertinent here, "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) ("[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief 'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.'") (citation omitted).

## B. Plaintiff Has Not Shown a Substantial Likelihood of Success on the Merits.

### 1. Plaintiff's Allegations Do Not Support an Erroneous-Outcome Claim.

To succeed on the erroneous outcome theory, Plaintiff must show a causal connection between the flawed outcome and gender bias. *Klocke v. University of Texas at Arlington*, 938 F.3d 204, 210 (2019), *cert. denied*, 140 S. Ct. 1268, 206 L. Ed. 2d 256 (2020); *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). The *Yusuf* court noted that a Plaintiff might allege "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant," or "particularized strengths of the defense," or "particular procedural flaws affecting the proof." *Id.* "Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 35 F.3d at 715. The Complaint here lacks factual allegations that would raise such a doubt.

#### a. Erroneous Outcome

The Complaint lacks any particularized facts demonstrating that Plaintiff is innocent and wrongly held responsible for sexual assault. Plaintiff's factual allegations in support of his innocence are three fold: (1) the investigator did not consider an alternative suspect; (2) Plaintiff's

6

blood alcohol content "level indicates that certain actions he was alleged to have taken that night were highly improbable"; (3) that officials failed "to confer with a medical expert concerning the potential physiological effects resulting from his" blood alcohol content. None of these allegations show a substantial likelihood of success on the merits of his erroneous outcome claim.

*Another Perpetrator*. Plaintiff's own allegations effectively dismisses this theory of innocence. According to Plaintiff, the complainant identified Plaintiff—not this third party—as the perpetrator in every account she gave of the incident, including the morning after.[9] Moreover, prior to the spring break trip, the complainant had taken steps to ensure she would not be alone with this third party, including informing her fellow students about her concern. The investigator's decision not to talk to this third party does not demonstrate Plaintiff's innocence. During the live hearing, Plaintiff's advisor and the hearing officer indeed asked Plaintiff, the complainant, and relevant witnesses about this person, including eliciting testimony about this individual's physical description, complainant's prior relationship with him, and complainant's identification. Thus, although the investigator did not interview this alleged perpetrator, the hearing officer made a finding of responsibility after developing a meaningful record.

*Plaintiff's Blood Alcohol Content Level*. Plaintiff has several arguments arising from his blood alcohol content level. First, Plaintiff contends the hearing officer should have considered his counter-complaint against his accuser in which he complained that he was too intoxicated to consent to any sexual activity. However, as Exhibit 4 definitively shows, Plaintiff informed the University he did not want officials to take any action on his complaint.

But even entertaining the premise that the hearing officer was obligated to consider his counter-complaint, this argument is absurd. The best-case scenario for Plaintiff if the hearing

---

[9] Compl. ¶ 46.

officer found Plaintiff's counter-complaint credible is to impose similar sanctions on the complainant, not to free Plaintiff of responsibility for violating the University's Sexual Misconduct Policy. Any other result would reward highly intoxicated sexual aggressors.

Also related to his blood alcohol content, Plaintiff contends that because he could not remember the events that occurred on the night of the alleged sexual assault, the hearing officer should not have credited the complainant's testimony as this improperly shifted the burden of proof to him to prove his innocence. This is nothing more than an attack on the hearing officer's credibility determination. The complainant and witnesses testified to a version of events that the hearing officer found credible.

Finally, Plaintiff contends that the University should have conferred with a medical expert to determine the physiological effects of Plaintiff's blood alcohol content level on the night of the alleged assault because his "high blood alcohol content level indicates that certain actions he was alleged to have taken that night were highly improbable." Nothing in the University's Title IX rules prohibits a student from hiring a medical expert, submitting the expert' report to the hearing officer, and having the expert attend and testify at the hearing. If Plaintiff believed this was relevant and material evidence, he should have developed it.  Even entertaining the possibility that the University has an obligation to consult a medical expert on behalf of students who are too drunk to remember their actions, Plaintiff fails to explain how such testimony would differ from the experience of a lay person with common knowledge and experience of college students, alcohol, or spring break.

Nothing in the record indicates the hearing officer disagreed with the investigator's finding that Plaintiff's blood alcohol content level was 0.232, that he consumed significant amounts of alcohol that evening, or such consumption carried physiological side effects. This evidence was in

the record. A lay person presumably knows as well as any expert how to asses the effect of alcohol on impulse and inhibitions as well as its physiological effects. But more importantly for this claim, nowhere does Plaintiff allege that when his blood alcohol content level reaches 0.232, he is actually incapable of all physical activity, including opening a door, locking a door, removing his pants, inserting his penis in a vagina, and pulling up his pants.

In sum, Plaintiff fails to sufficiently allege facts that plausibly establish Plaintiff is innocent.

### b.  Gender Bias Motivating Erroneous Outcome

Nor can Plaintiff show that gender bias motivated the hearing officer's finding of responsibility. Even assuming that Plaintiff could succeed on the first element of an erroneous outcome claim, he fails to plausibly allege the second element—that the hearing officer's decision was motivated by gender bias.

Plaintiff's primary contention is that the University and the Title IX Office "are motivated to" (1) "portray the University in local and national media as being tough on  males who are accused of sexual misconduct on campus"; (2) "prevent[] the University from being the target of a Title IX lawsuit from a female who has accused a male student of sexual misconduct; and (3) protect the University from financial penalties for failing to comply with the policies and guidance issued by the Department of Education.[10] These allegations are conclusory and without more specific evidence, are insufficient to succeed on an erroneous outcome claim. Plaintiff must plausibly allege that Defendants "discriminated against him … because of sex; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the [university's] actions." *Doe v. Western New England Univ.*, 228 F. Supp. 3d 154,

---

[10] Compl.  ¶¶ 81 – 83.

187 (W.D. Mass. 2017) (emphasis in original). He may point to "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender" or "statements reflecting bias by members of the tribunal." *Yusuf*, 35 F.3d at 715.

Generalized pressures to address sexual harassment on campus, without specific allegations of irregularities in the investigation process or statements by participants in the decision-making, are not enough to find liability under Title IX. *See e.g.*, *Doe v. Cummins*, 662 F. App'x. 437, 452–53 (6th Cir. 2016) (holding that general allegations "that the Department of Education's 'Dear Colleague Letter' induced [the University] to discriminate against males in sexual-assault investigations in order to preserve federal funding," "without more, is insufficient to create a plausible claim of gender bias under Title IX."); *Doe v. University of South Alabama*, No. CV 17-0394-CG-C, 2020 WL 759895 (S.D. Ala. Feb. 14, 2020) ("Absent university-specific allegations of community pressure, allegations of a national bias against males based on the letter have been found insufficient to support an inference of gender bias."); *Doe v. Washington Univ.*, 434 F. Supp. 3d 735 (E.D. Mo. 2020), *reconsideration denied*, No. 4:19 CV 300 (JMB), 2020 WL 1308209 (E.D. Mo. March 19, 2020) (When courts consider allegations of external pressure in a Title IX erroneous outcome claim, they look to see if a plaintiff has alleged facts demonstrating that it was pressured not only to aggressively pursue sexual assault cases, but to do so in a manner biased against males, thus allegations of public criticism of the university as well and awareness of that criticism by University officials were insufficient); *Doe v. Loh*, CV PX-16-3314, 2018 WL 1535495, at *9 (D. Md. Mar. 29, 2018), *aff'd*, 767 F. App'x 489 (4th Cir. 2019) (holding that allegation of "general pressure that the Dear Colleague letter supposedly exerted on all universities does not allow the inference that UMCP succumbed to such pressure, and that the pressure

rendered a biased outcome in Doe's case."); *Doe v. Univ. of Cincinnati*, No. 1:16CV987, 2018 WL 1521631, at *6 (S.D. Ohio Mar. 28, 2018) ("In the cases where public pressure was found to support claims of erroneous outcome, that public pressure targeted the specific disciplinary action being challenged."); *Ruff v. Bd. of Regents of Univ. of N.M.*, 272 F. Supp. 3d 1289, 1296–97 (D.N.M. 2017) (stating that male college student failed to allege facts demonstrating that outside pressure in the form of a actually influenced the University's pursuit of the sexual assault case in a gender-biased manner rather than because of the serious nature of the female student's allegations); *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) (concluding that allegations, including that "the University was, at the time of the allegations against [the plaintiff], subject to a Department of Education investigation into the University's handling of sexual violence and sexual harassment complaints" and that the investigation "motivated Defendants to handle the case against Plaintiff more aggressively, and to protect the reputation and financial well-being of [the University]" were conclusory and insufficient to allow an inference of gender bias; the various plaintiffs' allegations largely tend to show, if anything, pro-victim bias, which does not equate to anti-male bias"); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 886 (N.D. Ohio 2017) (determining that public criticism of the College did not suggest an adequate basis for gender bias and that the fact that the College was seeking to comply with federal regulation was not an indication of gender bias); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017) ("[T]his Court joins the majority of federal courts in finding a general reference to federal pressure, by itself, is insufficient to show gender bias."); *Doe v. Lynn Univ., Inc.*, 224 F. Supp. 3d 1288, 1342 (S.D. Fla. 2016) (granting Defendant's motion to dismiss because nationwide pressure on universities was not enough to support "the plausible inference of a causal connection between the flawed outcome and gender bias" where Plaintiff did not allege that any

such media attention was focused on Defendant or that Defendant's student body levied any criticism at its handling of sexual misconduct cases).

Plaintiff does not make any particularized allegations that females similarly situated to the Plaintiff are treated any differently by the University. While Plaintiff alleges bias in favor of the victim in this case, that is insufficient to show gender bias. This is because "any bias in favor of the alleged victims…and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 778–779 (S.D. Ohio 2015); *King v. DePauw Univ.*, No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507, at *10 (S.D. Ind. 2014) (university has no control over the gender makeup of those who are accused by other students of sexual misconduct and any bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused of assault were male); *Haley v. Va. Com. Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996) ("a bias against people accused of sexual harassment and in favor of victims ... indicate[s] nothing about gender discrimination"); *Doe v. Univ. of Mass.–Amherst*, No. CV 14-30143-MGM, 2015 WL 4306521, at *9 (W.D. Mass. 2015) (dismissing Plaintiff's suggestion that bias is evidenced because the decision-maker credited accuser's testimony rather than the accused).

In sum, a court is not required to accept Plaintiff's conclusions if they "cannot reasonably be drawn from the facts alleged." *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 751 (E.D. Tenn. 2009) (emphasis added). Moreover, there is a presumption of honesty and integrity in those serving as adjudicators. *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016), *aff'd sub nom. Dung Quoc Pham v. Blaylock*, 712 F. App'x 360 (5th Cir. 2017); *see also Bleiler v. Coll. of Holy Cross*, No. CIV.A. 11-11541-DJC, 2013 WL 4714340, at *13 (D. Mass. 2013) ("alleged prejudice of university hearing bodies must be based upon more than mere speculation

and tenuous inferences"). Plaintiff does not allege any statements or actions by the investigative or hearing officers, either before, during, or after the hearing, that plausibly show a bias against, or hostility toward males. *See Doe v. West. New England Univ.*, 228 F. Supp. 3d 154, 189 (granting dismissal of Title IX claim where complaint lacked any statements by pertinent university employees demonstrating gender bias).

Plaintiff's claim of erroneous outcome is not viable.

## 2.  The Allegations Do Not Support a Selective-Enforcement Claim.

To succeed on a selective enforcement theory, Plaintiff must show that regardless of his guilt or innocence, the decision to initiate the disciplinary proceedings against him and/or the severity of his punishment was affected by his gender. *See Klocke*; *Yusuf*, 35 F.3d at 715. In other words, Plaintiff must plead that "a female was in circumstances sufficiently similar" to him and that the female was treated more favorably. *See Doe v. Univ. of the South*, 687 F. Supp. 2d at 756. Plaintiff must "demonstrate[] selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges." *See Doe v. Case Western Reserve Univ.*, No. 14-2044, 2015 WL 5522001, *at 6 (N.D. Ohio Sept. 16, 2015). The comparator cannot be the person who accused the plaintiff. *Id.*

But here, Plaintiff has not pointed to any facts that show his gender was a motivating factor in Defendant's decision to initiate the investigation or in the severity of the penalties. Plaintiff's arguments appear to focus on the investigation and adjudication. This is because the investigation was initiated by the female student filing of a formal complaint. *See Doe v. University of Texas at Austin*, No. 1:18-CV-85-RP, Dkt. 30 (W.D. Tex. May 15, 2018) (concluding that plaintiff student could not show a likelihood of success on Title IX selective-enforcement claim because a student

filed the complaint). And the one-year suspension is the minimum provided for by the University's policies and procedures.

Plaintiff has also not plausibly alleged that any female in circumstances similar to his was treated more favorably. *See Gudgel v. Del Mar Coll.*, No. 2:16-CV-513, 2018 WL 472829, at *2 (S.D. Tex. Jan. 17, 2018). He also has not alleged that a female accused of sexual assault would not have been subjected to the same disciplinary procedures and sanctions. In fact, the Complaint does not include any allegations at all pertaining to a female in nearly identical circumstances to Plaintiff. *See Lee v. Kansas City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (Discussing Fifth Circuit's requirement that a comparator be in "nearly identical circumstances.").

Plaintiff's allegation that the complainant has received more favorable treatment are also insufficient. As previously discussed, an alleged bias in favor of the complainant does not equate gender bias simply because many of the complainants are female. *See Doe v. Trustees of Boston College*, 892 F.3d 67, 91-92 (1st Cir. 2018) (upholding summary judgment on Title IX claim where 10 years of data demonstrate that only males were accused of sexual assault and noting that "The gender of the students accused of sexual assault is the result of what is reported to the University, not the other way around."); *King*, 2014 WL 4197507 at *10 (university has no control over gender makeup of those who are accused by other students of sexual misconduct).

For these reasons, Plaintiff's selective enforcement theory is also not viable.

### 3.  Plaintiff Fails to Plead a Plausible Due Process Claim.

***Procedural Bar to Due Process Claim.*** Plaintiff's due process claim is barred because the Eleventh Amendment to the United States Constitution bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527

U.S. 666, 670 (1999). Eleventh Amendment immunity applies to Plaintiff's due process claims ostensibly brought pursuant to Section 1983. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 341 (1979). Texas has not waived its federal court immunity from suit under civil rights statutes. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

Further, state entities have immunity from claims brought under Section 1983 because Congress has not specifically abrogated their immunity under that statute. *See, e.g., Quern*, 440 U.S. at 340-55. Finally, the Fifth Circuit and other courts in this district have consistently held that the University is an arm of the State of Texas and therefore afforded the same immunities as the state. *See Elhaj-Chehade v. Office of Chief Admin. Hearing Officer*, 235 F.3d 1339, 1 (5th Cir. 2000).

The fact that Plaintiff has styled this claim as a declaratory judgment claim is not relevant. The Declaratory Judgment Act provides no independent cause of action. The operation of the Declaratory Judgment Act is "only 'procedural' . . . leaving 'substantive rights unchanged.'" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) and then *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Therefore, the Act "is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (internal citation omitted). Because the Declaratory Judgment Act provides no independent cause of action, Plaintiff may not use the Act alone as a vehicle to bring its Due Process claim into federal court.

Because the University has not waived its immunity from suit under Section 1983, and because Congress has not specifically abrogated such immunity, this Court lacks jurisdiction to hear Plaintiff's constitutional claim. *See Olivier v. Univ. of Tex. Sys.*, 988 F.2d 1209, 1993 WL

81990, *1 (5th Cir. 1993) (per curiam) (affirming dismissal under Rule 12(b)(1) of plaintiff's Section 1983 claim against state university).

**Substantive Bar to Due Process Claim.** Even assuming that the Court has subject matter jurisdiction over Plaintiff's due process claim, the University's procedures did not violate Plaintiff's due process.  Plaintiff claims that the University violated his due process rights when it (a) did not undertake a full and impartial investigation; (b) did not permit Plaintiff to be fully and effectively represented by counsel; (c) permitted the use of hearsay evidence at the hearing without providing Plaintiff the opportunity to effectively cross-examine witnesses; and (d) relied on a preponderance of the evidence standard. None of these are substantially likely to succeed on the merits.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Plaintiff had a live hearing that lasted almost six hours. At the hearing, he was represented by an advisor who could cross-examine the complainant and witnesses. The investigator was also present at the hearing and subject to cross-examination. There is no requirement under due process that a student be granted unfettered control over the investigation, unfettered cross examination by counsel at a live hearing, or the application of a standard other than preponderance of the evidence.  Likewise, the due process clause does not compel perfection when universities adjudicate misconduct.  "In addition, we are careful to admonish that the due course of law guarantee, like the due process clause, does not ensure that the academic disciplinary process is accurate and without error; it merely guards against the risk of unfair dismissal or suspension if that may be accomplished without prohibitive cost or interference with the educational process." *See Nash v. Auburn University,* 812 F.2d 655, 661 (11th Cir. 1987)

(citing *Goss v. Lopez*, 419 U.S. 565, 579–80 (1975)); *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 931 (Tex. 1995). The university, pursuant to its rules and procedures, provided Plaintiff with a high-level of due process—substantially more than the minimums required by law.

### C. Plaintiff Has Not Shown a Substantial Threat of Irreparable Injury.

A harm is irreparable where there is no adequate remedy at law, such as monetary damages. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). A showing of a speculative injury is not sufficient; there must be more than an unfounded fear. *Id.* (citing *Carter v. Heard*, 593 F.2d 10,12 (5th Cir. 1979)). In this case, Plaintiff argues that he will suffer irreparable harm if a temporary restraining order is not granted, because "he will be unable to continue his coursework the following semester" and "will not longer be considered a student in good standing," the "suspension shall be noted on [his] academic transcript, and restrict his ability to serve in leadership roles in the university."[11] However, because Plaintiff has been suspended—not expelled—his education is delayed but not irrevocably denied. Moreover, if Plaintiff were to succeed on the merits in this litigation, the alleged reputational harm is compensable.

Notably, Plaintiff does not cite a single case holding that suspension from a university is an irreparable harm or that delay in education and potential reputational damage is not compensable. This is because numerous cases have held that suspension is not irreparable injury. *See Doe v. Princeton Univ.*, No. 3:20-CV-4352-BRM-TJB, 2020 WL 2097991, at *7 (D.N.J. May 1, 2020) (if plaintiff prevails on the merits of his underlying claims and is reinstated to Princeton, he will have suffered a delay in his education, analogous to a suspension, which can be remedied through monetary compensation); *Madej v. Yale Univ.*, No. 3:20-CV-133 (JCH), 2020 WL 1614230, at *6–7 (D. Conn. Mar. 31, 2020) (academic withdrawal does not mean plaintiff will

---

[11] TRO App. 6.

never be able to obtain his degree; rather, his ability to do so will be delayed, which can be remedied through monetary compensation; reputational harm assertions are "too speculative to warrant injunctive relief"); *Doe v. Vassar Coll.*, No. 19-CV-9601 (NSR), 2019 WL 622291 2019 WL 6222918, at *6 (S.D.N.Y. Nov. 21, 2019) (finding no irreparable harm where plaintiff claimed he would "lose the ability to play college soccer as well as his ability to graduate with his class this year"); *Roden v. Floyd*, No. 2:16-CV-11208, 2018 WL 6816162, at *5 (E.D. Mich. Nov. 13, 2018), report and recommendation adopted, 2018 WL 6815620 (E.D. Mich. Dec. 27, 2018) (if plaintiff ultimately prevails on the merits of his underlying claims and is reinstated, he will have suffered a delay in his education, but delays in education do not constitute irreparable harm); *Montague v. Yale Univ.*, No. 3:16-CV-00885(AVC), 2017 WL 4942772, at *3–4 (D. Conn. Mar. 8, 2017) (harm from the delay in completing education, not graduating with contemporaries, and possibility of decreased employment opportunities are quantifiable and can be adequately remedied by money damages); *Knoch v. Univ. of Pittsburgh*, No. 2:16-CV-00970-CRE, 2016 WL 4570755, at *8–9 (W.D. Pa. Aug. 31, 2016) (any interruption of education and delay in entering the workforce due to suspension can adequately be compensated by monetary damages should plaintiff succeed on the merits of his claims; it is speculative that plaintiff would lose any professional connections by virtue of his suspension); *Howe v. Pennsylvania State Univ. – Harrisburg*, No. CV 1:16-0102, 2016 WL 393717, at *6 (M.D. Pa. Feb. 2, 2016) appeal dismissed (Mar. 29, 2016) ("[T]he court finds that even if the plaintiff would experience a delay as a result of his suspension, this would not constitute irreparable harm which would not be compensated with monetary damages in the future, if warranted."); *Pierre v. University of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015) ("[C]ourts have also held that a suspension is not irreparable."); *Caiola v. Saddlemire*, No. 3:12-CV-00624 VLB, 2013 WL 1310002, at *2 (D. Conn. Mar. 27,

2013) (rejecting plaintiff's claim that stigma of expulsion could interfere with his career as "speculative" and noting that "[i]n order to demonstrate that he will suffer irreparable injury, plaintiff must show that a monetary award will not adequately compensate him for his injuries"); *Mahmood v. Nat'l Bd. of Med. Examiners*, No. CIV.A. 12-1544, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012) (collecting cases stating that delays in education services do not constitute irreparable harm); *Oser v. Capital Univ. Law Sch.*, No. 2:09-CV-709, 2009 WL 2913919, at *11 (S.D. Ohio Sept. 8, 2009) (noting that plaintiff had "no general right to attend law school" and that he will not be irreparably harmed by "[a]ny delay in his degree conferral" if he should ultimately succeed on his claim); *Marsh v. Delaware State Univ.*, No. CIV.A. 05-00087JJF, 2006 WL 141680, at *6 (D. Del. Jan. 19, 2006) (delay in education does not amount to irreparable harm); *Baer v. Nat'l Bd. of Med. Examiners*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) (inability to continue as a medical student without interruption is not a harm that is irreparable to Baer's potential medical career); *Phillips v. Marsh*, 687 F. 2d 620 (2d Cir. 1982) ("We can conceive of no irreparable harm that would accrue to [the plaintiff] in allowing her graduation to await the outcome of the trial on the merits; any damages to her from deferring her career as a military officer in that period of time would surely be compensable by monetary damages.").

As these cases show, a delay to allow resolution of this matter on the merits will not cause irreparable injury. Moreover, this finding alone is sufficient for this Court to deny the application for a TRO. *See DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (per curiam) (affirming denial of preliminary injunctive relief on ground that movant had failed to show irreparable injury, and pretermitting discussion of other three factors).

Even cases where the Court has found irreparable injury because of a student suspension, the facts in those cases were remarkably different.  In *Doe v. University of Connecticut*, No.

3:20CV92 (MPS), 2020 WL 406356, at *1 (D. Conn. 2020), the university suspended plaintiff for two years, plaintiff had one semester remaining until graduation when he was suspended, plaintiff had had already begun to apply for jobs. In *Doe v. Pennsylvania State University*, 276 F.Supp.3d 300 (M.D. Pa. 2017), the Court found irreparable harm because the broad language of the Plaintiff's sanction could extend the two-year suspension for many years. None of these factors are present in this case.

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. Here, Plaintiff has already been suspended and that suspension upheld on appeal when he filed suit.  Preservation of the status quo will not help him. On the contrary, the relief requested would upset the status quo, not preserve it.

**D.  The Public Interest Factors Counsel Against an Injunction.**

The University is a public institution funded by public dollars administered by public servants serving the public good by educating Texas youth. The public has a compelling interest in eradicating sex discrimination in education and sexual misconduct between students. In addition, Universities have great latitude in administering their rules and regulations as courts recognize that the institutions' primary responsibility is to provide a safe learning environment for all its students. *See Goss*, 419 U.S. at 580; *see also Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 14–15 (1st Cir. 1988) ("Although the protection of [a student's private interest] would require all possible safeguards,  it must be balanced against the need to promote and protect the primary function of institutions that exist to provide education."); *Am. Future Sys., Inc. v. Penn. State Univ.*, 752 F.2d 854, 865 (3d Cir.1984) ("There can be no doubt that a public university has a significant interest in carrying out its educational mission"). Because the Plaintiff cannot show a substantial

likelihood of success on the merits of his due process and Title IX claims, the public interest demands allowing the University's sanctions to stand pending a decision on Plaintiff's motion for a Preliminary Injunction and adjudication of the claims on the merits.

## IV. CONCLUSION

For the reasons discussed above, the Court should deny Plaintiff's Application for Temporary Restraining Order.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

*/s/ Cynthia O. Akatugba*
CYNTHIA O. AKATUGBA
Texas Bar No. 24087083
Southern District Federal ID No. 3437774
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
cynthia.akatugba@oag.texas.gov

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2021, a true and correct copy of the foregoing instrument has been served via the Court's electronic notification system to the following:

David K. Sergi
DAVID K. SERGI AND ASSOCIATES
329 S Guadalupe
San Marcos, TX 78666
david@sergilaw.com
ATTORNEY FOR PLAINTIFF

Katherine Frank
Sergi & Associates, P.C.
329 S. Guadalupe St.
San Marcos, TX 78666
katie@sergilaw.com

Anita Kawaja
Law Offices of Anita Kawaja
P.O. Box 31400
Houston, TX 77231
Anita@AnitaKawajaLaw.com

*/s/ Cynthia O. Akatugba*
CYNTHIA O. AKATUGBA
Assistant Attorney General